**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Rajesh Thuthija

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAJESH THUTHIJA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BANKERS HEALTHCARE GROUP, LLC,<br><br>Defendant. | Case No.:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF:<br><br>1. THE TRUTH IN LENDING ACT, 15 U.S.C. §§ 1601, et seq. ("TILA"); AND<br>2. CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200, ET SEQ. ("UCL")<br><br>JURY TRIAL DEMANDED |

//
//
//
//
//
//
//
//

- 1 -
CLASS ACTION COMPLAINT

## INTRODUCTION

1. Plaintiff RAJESH THUTHIJA, individually and on behalf of all others similarly situated ("Plaintiff"), through Plaintiff's attorneys, brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, against Defendant BANKERS HEALTHCARE GROUP, LLC ("Defendant"), challenging Defendant's practice of deceptive and misleading representations and/or omissions and BHG's business practice of extending millions of dollars in consumer loans to Plaintiff and other similarly situated consumers, while falsely disguising those consumer loans as "commercial loans" made to businesses *that do not exist.* BHG's purpose in falsely disguising many of its consumer loans as "commercial loans" is to bolster its revenues and evade certain licensing and disclosure requirements that federal and state laws impose upon consumer lenders.

2. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

4. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all alter egos, agents, principals, employees, officers, members, directors, heirs, successors, assigns, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

## JURISDICTION AND VENUE

5. The Court has federal question jurisdiction because this case arises out of violations of federal law, including Plaintiff's claims under the Truth in Lending Act ("TILA") 15 U.S.C. § 1640(e), and 28 U.S.C. §§ 1331 and 1337. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant regularly conducts business in this district and a substantial portion of the events and omissions giving rise to this Complaint, and the harm to Plaintiff, occurred within this district.

## PARTIES

7. Plaintiff is a natural person residing in Loma Linda, California.

8. At all times relevant hereto, Plaintiff is and has been a consumer, and has never owned or operated a business using a "d/b/a" in front of his name.

9. Defendant is a privately owned limited liability company with a headquarters in Florida and is a financial lender that regularly makes loans to businesses and consumers like Plaintiff nationwide.

10. At all times relevant hereto, Defendant regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and Defendant is the person to whom the transaction which is the subject of this action is initially payable, making Defendant a creditor within the meaning of TILA, 15 U.S.C. § 1602(g) and Regulation Z § 1026.2(a)(17).

## FACTUAL ALLEGATIONS

11. Defendant made its loan offerings to Plaintiff appear attractive by, among other things, offering an easy loan approval process and promising prompt funding upon approval.

12. Sometime before or around November 2021, Plaintiff Thuthija contacted Defendant to apply for a personal loan. Plaintiff Thuthija contacted Defendant as an individual, and not on behalf of any business related to or owned by Plaintiff Thuthija.

13. On or around November 24, 2021, Plaintiff Thuthija applied for a loan with Defendant as an individual, using his own name, his own personal contact information, and his own personal financial information. Plaintiff Thuthija never

represented to Defendant that Plaintiff Thuthija desired a business loan, or that he owned or operated a business. Indeed, Plaintiff Thuthija represented to Defendant that he was an engineer that received a W-2 from his employer, and that Plaintiff Thuthija needed the loan in order to help pay his personal use and financial obligations.

14. On or around December 1, 2021, Plaintiff Thuthija entered into one of Defendant's standard loan agreements (the "Loan Agreement"), which was prepared by Defendant. Based upon Defendant's oral and written representations to Plaintiff throughout the application process, Plaintiff electronically singed the Loan Agreement.

15. Upon offering and extending an approximately $71,000 loan to Plaintiff Thuthija, Defendant and its Loan Agreement, including addendums thereto, failed to specify the "annual percentage rate" of interest (or "APR") and financing charge that Plaintiff Thuthija would be charged on his loan. The Loan Agreement merely indicated a "rate" of "14.9900%," and failed to specify if this percentage "rate" was either APR or an interest rate, while Defendant was required to disclose both APR as well as the interest rate and the financing charge in the Loan Agreement.

16. Despite knowing that certain material loan terms and financial disclosures were required to be clearly and conspicuously disclosed to Plaintiff Thuthija, Defendant omitted such disclosures from Plaintiff's Loan Agreement, and falsely drafted its Loan Agreement to Plaintiff Thuthija as a "commercial loan" to a "business" that was purportedly a "sole proprietorship" named "Rajesh K. Thuthija d/b/a Rajesh K. Thuthija."

17. At all times relevant, Defendant was fully aware that the purported "sole proprietorship" "Rajesh K. Thuthija d/b/a Rajesh K. Thuthija" did not exist and never existed, and Plaintiff never represented to Defendant that he was a sole proprietor or that he operated a business or any other entity under the alias "d/b/a Rajesh K. Thuthija."

18. At all times relevant, and throughout Plaintiff Thuthija's loan application and approval process during which Defendant communicated with Plaintiff Thuthija, Defendant never asked Plaintiff Thuthija whether he operated a "sole proprietorship," whether Plaintiff Thuthija sought a loan for business purposes, or whether Plaintiff Thuthija had any intention of starting a business at all.

19. The only documentation Defendant required from Plaintiff Thuthija to approve his loan was his paystubs as an employee and his individual tax return, which, of course, showed no "sole proprietorship" or other "business" income or expenses.

20. Plaintiff Thuthija never discussed or requested any type of business financing with Defendant at any time during his loan application or approval process. Defendant dealt with Plaintiff Thuthija as an individual seeking a personal loan at all times during the loan application, underwriting, and approval process, and Plaintiff Thuthija never indicated he was a sole proprietor or conducted any business as "d/b/a Raj Thuthija."

21. Upon information and belief, Defendant intentionally prepared Plaintiff's Loan Agreement as a commercial loan agreement, falsely indicated that Plaintiff Thuthija was a sole proprietor, and inaccurately included "d/b/a" with Plaintiff Thuthija's name, despite the fact that Defendant knew, or should have known, that Plaintiff Thuthija was an individual and not a business.

22. Upon information and belief, Defendant intentionally omitted disclosures, including specifying the "annual percentage rate" of interest (or "APR") or financing charge that Plaintiff Thuthija would be required to pay Defendant in connection with the loan; and included inaccurate or false "commercial" language in the Loan Agreement to circumvent compliance with state and federal disclosure laws applying to consumer loans and consumer lenders.

23. Plaintiff Thuthija was misled and deceived by Defendant regarding the terms and nature of the Loan Agreement. Unbeknownst to Plaintiff Thuthija until

1 Defendant later engaged in collection activities seeking to collect upon the Loan
2 Agreement from Plaintiff Thuthija, Defendant's Loan Agreement implied that
3 Plaintiff Thuthija was a business owner and that the loan was a business loan. Had
4 Plaintiff Thuthija known or realized prior to signing the Loan Agreement that
5 Defendant had inaccurately created the Loan Agreement indicating that Plaintiff
6 Thuthija was a business owner, or that Plaintiff Thuthija would be taking out a
7 business loan as a purported "d/b/a", Plaintiff Thuthija would not have signed or
8 entered into the Loan Agreement.

9    24.   Because Defendant failed to disclose this material information in the
10 manner required by applicable statutes, Plaintiffs and other similarly situated persons
11 were not adequately informed or provided meaningful disclosures as required under
12 TILA in conjunction with their transaction(s) with Defendant.

13   25.   As a result of this transaction with Defendant and Defendant's Loan
14 Agreement, Plaintiffs were misled and deceived and suffered economic injury due to
15 Defendant's representations and omissions in the Loan Agreement, which lacked
16 transparency regarding the financing terms involved in the transaction with
17 Defendant, and falsely created the Loan Agreement as a business or commercial loan
18 rather than a consumer loan to Plaintiffs.

## CLASS ACTION ALLEGATIONS

20   26.   Plaintiff brings civil class action on behalf of himself individually and on
21 behalf of all other similarly situated persons as a class action. Plaintiff seeks to
22 represent the following class of persons (the "Class"):

> All persons who were provided a loan by Defendant, which included "d/b/a" before the individual borrower's name, or indicated the individual borrower was a sole proprietor on the borrower's loan documents, within the four (4) years prior to the filing of the Complaint in this action.

26   27.   Plaintiff also seeks to represent the following group of persons (the
27 "Sub-Class"):

28

- 6 -
CLASS ACTION COMPLAINT

> All persons who were provided a Loan Agreement by Defendant, which did not specify the loan's APR, interest rate, and/or financing charge on their loan documents, within the four (4) years prior to the filing of the Complaint in this action.

28. Defendant, its employees, and agents are excluded from the Class.

29. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

30. Plaintiff and all Class members have been impacted and harmed by the acts of Defendant or its affiliates, subsidiaries, principals, agents, or alter egos.

31. This Class Action Complaint seeks injunctive relief and monetary damages.

32. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). his class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

33. Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, or judicial economy.

34. <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to hundreds of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

35. <u>Typicality</u>. The claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members she seeks to represent. Plaintiff and

all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

36. <u>Adequacy</u>. As Class Representative, Plaintiff has no interests adverse to, or which conflict with, the interests of the absent members of the Class, and is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Class Action Complaint to add additional Class representatives or assert additional claims.

37. <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action. Plaintiff's counsel is experienced in handling complex class action claims.

38. <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the Class defined above and predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member and may be determined without reference to the individual circumstances of any Class member, include (but are not limited to) the following:

   a. Whether Defendant or its affiliates, subsidiaries, principals, agents, or alter egos have violated the statutes referenced herein;

   b. Whether Defendant or its affiliates, subsidiaries, principals, agents, or alter egos are liable to Plaintiff and the Class members for damages;

   c. Whether Defendant or its affiliates, subsidiaries, principals, agents, or alter egos of Defendant should be enjoined from engaging in such conduct in the future.

39. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class

could afford to pursue individual litigation, the Court system could not. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system by causing multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the statutes alleged herein. The interest of Class members in individually controlling the prosecution of separate claims is small because the damages in an individual action for violation of the statutes alleged herein are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions. The Class members can be readily located and notified of this class action through Defendant's records.

40. Additionally, the prosecution of separate actions by individual Class members would create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

41. Defendant or any affiliates, subsidiaries, principals, agents, or alter egos of Defendant have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

42. Moreover, on information and belief, Plaintiff alleges that the violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

# FIRST CAUSE OF ACTION

## Violation of the Truth in Lending Act (TILA)

## 15 U.S.C. §§ 1601, et seq.

43. Plaintiff incorporates by reference the allegations above as if fully stated herein.

44. The Truth-in-Lending Act ("TILA") protects consumers against inaccurate and unfair billing and credit card practices, requiring lenders to provide consumers with loan cost information. 15 U.S.C. § 1601, *et seq.* The TILA was passed primarily to aid the unsophisticated, inexperienced or uninformed consumer so that he/she would not be deceived and misinformed, and so he/she can understand the true costs he/she will have to pay. *Thomka v. Chevrolet, Inc.*, 619 F.2d 246 (3rd Cir. 1980). The purpose of TILA is to prevent ordinary consumers from being deceived about how much interest they are being charged, and "should be liberally construed to protect borrowers." *In re Ramsey,* 176 B.R. 5 183, 188 (9th Cir. BAP 1994). The TILA seeks "to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. Enforcement is achieved in part **by a system of strict liability in favor of consumers** who have secured financing when the proper disclosures are not made. 15 U.S.C. § 1640(a). Indeed, creditors are liable even for unintentional or technical violations of TILA. *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989).

45. TILA requires a series of disclosures that must be made before the consummation of the credit agreement. *See Ortiz v. Rental Management, Inc*, 65 F.3d 335, 338 (3rd Cir. 1995). In the event a creditor fails to disclose any of the credit terms required under the TILA and its regulations in a credit sale, a consumer may

bring a civil action against the creditor. 15 U.S.C. § 1640; *Purple v. Eldrgie Auto Sales, Inc.*, 91 F.3d 797, 800 (6th Cir. 1996). As a "creditor" under § 1602(g) who engaged in a consumer credit transaction and made a "credit sale" to individuals like Plaintiff and the Class members, Defendant was required to make a series of standard disclosures conspicuously and prominently prior to the parties' execution of the Loan Agreements.

46. By failing to disclose the true terms and cost of the transaction, Defendant has, and continues to, mislead Plaintiff and similarly situated consumers and is in clear violation of the TILA as well as the other consumer protection statutes as alleged herein.

47. Defendant's foregoing acts and omissions in conjunction with the transaction and the Loan Agreement given to Plaintiff and other Class members violated the requirements of Truth in Lending and Regulation Z in the following and other respects:

   a. By failing to provide the required disclosures prior to consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Regulation Z § 1026.17(b);

   b. By failing to make the required disclosures, including the annual percentage rate and finance charge, clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation Z § 1026.17(a);

   c. By failing to include in the finance charge certain charges imposed by Defendant payable by Plaintiff incident to the extension of credit as required by 15 U.S.C. § 1605 and Regulation Z § 1026.4; and thus improperly disclosing the annual percentage rate and finance charge in the Loan Agreement and the transaction in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z § 1026.18(d)

48. By reason of the aforesaid conduct violations of TILA and Regulation Z, Defendant is liable to Plaintiff and each of the Class members in the amount of twice

the finance charge or $2,000, whichever is less, plus actual damages to be established at trial, and attorney fees and costs in accordance with 15 U.S.C. § 1640. As a result of Defendant's improper material disclosures in violation of state and federal laws, regulations, and industry standards, Defendant must rescind the Loan Agreement for Plaintiff and all other similarly situated persons in the Class.

## SECOND CAUSE OF ACTION

### Violation of the California Unfair Competition Law

### Cal. Bus. & Prof. Code §§ 17200, et seq.

49. Plaintiff incorporates by reference the allegations above as if fully stated herein.

50. The UCL prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as those terms are defined by the UCL and relevant case law. By virtue of the above-described wrongful actions, inaction, misrepresentations, and omissions, Defendant engaged in unlawful, unfair and fraudulent practices within the meaning, and in violation of, the UCL.

51. In the course of conducting its business, Defendant committed "unlawful" business practices by, *inter alia*, failing to provide the required credit and financing disclosures prior to consummation of the transaction in violation of TILA as alleged above, and other consumer statutes as further alleged herein. Plaintiff and Class members reserve the right to allege other violations of law by Defendant constituting other unlawful business acts or practices.

52. Defendant's above-described wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair" business acts and practices in violation of the UCL in that Defendant's wrongful conduct is substantially injurious to consumers, offends legislatively-declared public policy, and is immoral, unethical, oppressive, and unscrupulous. Defendant's practices are also contrary to legislatively declared and public policies that seek to protect consumers from the uninformed use of credit or

deceived regarding financing terms involved in a transaction. The gravity of Defendant's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests other than engaging in the above-described wrongful conduct.

53. The UCL also prohibits any "fraudulent business act or practice." Defendant's above-described claims, nondisclosures, misleading statements, misrepresentations, and omissions were deceptive, false, misleading and likely to deceive the consuming public in violation of the UCL.

54. As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and their violations of the UCL, Plaintiff and Class members have suffered injury in fact and lost money or property as a result of Defendant's unfair and deceptive conduct.

55. Plaintiff and Class members have also suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, continuing to be contractually bound to a falsely created business or commercial loan and required by Defendant to pay amounts of money which include financing charges and interest which were not properly disclosed by Defendant to Plaintiff and the Class.

56. Unless restrained and enjoined, Defendant will continue to engage in the above-described wrongful conduct, causing harm to Plaintiff and the Class and the general public.

57. Plaintiff, therefore, on behalf of himself, Class members, and the general public, also seek restitution and an injunction, including public injunctive relief prohibiting Defendant from continuing such wrongful conduct, and requiring Defendant to rescind and modify its Loan Agreements to include the disclosures required by TILA and other applicable law, including the annual percentage rate, interest rate, and finance charge, clearly and conspicuously in writing prior to

CLASS ACTION COMPLAINT

consummation of Defendant's transactions with consumers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment in favor of himself and the Class as follows:

- An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firm representing Plaintiff as counsel for the Class;

- An Order declaring Defendant's conduct, as alleged above, was in violation of the statutes referenced herein;

- An Order finding in favor of Plaintiff and the Class on all counts asserted herein;

- An award of statutory, actual, compensatory, and/or punitive damages for Plaintiff and the Class, pursuant to the statutes referenced herein, in amounts to be determined by the Court and/or jury;

- An Order of rescission of the Loan Agreements violating the statutes referenced herein and providing restitution, including return of all monies taken by Defendant from Plaintiff and the Class;

- Injunctive relief prohibiting such conduct and violations by Defendant in the future;

- An Order awarding attorneys' fees and costs to counsel for Plaintiff and the Class pursuant to, *inter alia,* 15 U.S.C. § 1640 and California Code of Civil Procedure § 1021.5;

- Pre-judgment and Post-judgment interest; and

- Any other relief the Court may deem just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury on all claims and issues so triable.

Dated: April 25, 2024

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: *s/ Mona Amini*
ABBAS KAZEROUNIAN, ESQ.
DAVID J. MCGLOTHLIN, ESQ.
MONA AMINI, ESQ.
*Attorneys for Plaintiff*